LAURA PELON, Plaintiff-Appellant, v. BOB WALL *et al.*, Defendants-Appellees.

Second District    No. 2—93—0063

Opinion filed May 16, 1994.

H. Candace Gorman, of Chicago, for appellant.

Paul S. Chervin and John W. Barbian, both of Wildman, Harrold, Allen & Dixon, of Waukegan, for appellees.

JUSTICE PECCARELLI delivered the opinion of the court:

Plaintiff, Laura Pelon, appeals an order dismissing her three-count complaint against defendants, Bob Wall and Paul Seveska, and imposing sanctions pursuant to Supreme Court Rule 137 (134 Ill. 2d R. 137). The court dismissed the complaint pursuant to section 2—619(a)(4) of the Code of Civil Procedure (section 2—619(a)(4)) (735 ILCS 5/2—619(a)(4) (West 1992)), holding that the suit was barred by a judgment that dismissed plaintiff's complaint against Copley Press, the employer of defendants Wall and Seveska. At the time the trial court dismissed the complaint here, the judgment on which the court relied was on appeal to this court; since then, this court has entered a judgment affirming in part and reversing in part the first order. See *Pelon v. Copley Press* (2d Dist. 1993), No. 2—92—0629 (unpublished order under Supreme Court Rule 23).

On appeal, plaintiff argues that: (1) the trial court erred in

holding that *res judicata* barred the present action; and (2) the trial court abused its discretion in awarding defendants attorney fees under Rule 137. We reverse the judgment of the circuit court, and we remand for further proceedings.

On July 7, 1992, plaintiff filed the three-count complaint at issue in this case. The complaint alleged the following facts as the basis for each count. Until April 1991, plaintiff was employed by the Waukegan News-Sun as a salesperson. On or about April 26, 1991, plaintiff changed employment; she agreed to a contract for employment at will at her new job. On or about May 17, 1991, defendant Wall, advertising director for the News-Sun, called plaintiff and requested that she return for three days to train her replacement, as she had promised upon leaving that she would do.

When plaintiff returned to the News-Sun on May 20, 1991, she, Wall, and Seveska, who was an assistant to Glen Pfeil, the publisher of the News-Sun, met in Seveska's office. Seveska told plaintiff that he could secure her a lucrative employment package if she desired to return permanently to the News-Sun. Plaintiff expressed no interest in this general proposal at the time. Later, Seveska told plaintiff that Pfeil wanted her back and that plaintiff had Seveska "by the balls."

On or about May 22, 1991, plaintiff's third day of training her replacement, Seveska told her that he had been authorized to offer her a sales position at a large increase in pay; that plaintiff ought to talk to Wall; and that Wall had the written offer. At a meeting that day, Seveska asked plaintiff to notify her new employer as soon as possible so that, if plaintiff accepted the offer, she could be available for some important meetings with a client. Later that day, plaintiff met with Wall, who offered her a package that included, in part, a guarantee of $42,000 annual salary. Plaintiff replied that she would consider the offer.

On or about May 24, 1991, Wall telephoned plaintiff at plaintiff's new workplace and told her that the News-Sun needed her to start work right away. Plaintiff replied that she wanted the offer in writing. Wall told her that management had signed the agreement and that he could fax her a copy. Plaintiff declined the fax and Wall told her that the written offer would be available on May 24, 1991. Plaintiff told Wall that she accepted the offer that Wall had described to her.

After this conversation, plaintiff immediately notified her new employer of her decision, and she and her employer agreed that Friday, May 24, 1991, would be her last day on the job. Plaintiff immediately terminated her at-will employment contract.

On May 28, 1991, plaintiff returned to the News-Sun. On June

13, 1991, Seveska told plaintiff that the News-Sun had decided not to give her the salary or the territory she had been promised.

Count I of the complaint alleged that Wall and Seveska were liable to plaintiff for fraud because they knowingly misrepresented the agreement that plaintiff was being offered, and they did so with the intent to induce plaintiff to rely on these misrepresentations. Plaintiff's reliance on the misrepresentation, including that there was a signed agreement, resulted in plaintiff being fired when she asserted her rights to have the alleged contract enforced and caused plaintiff further psychological, medical, and financial hardships. Count I alleged that the firing was in furtherance of the misrepresentations and that defendants' actions were willful and wanton, entitling plaintiff to punitive damages.

Count II of the complaint alleged, somewhat conclusionally, that defendants intentionally interfered with plaintiff's employment and that they did so maliciously and wantonly. Count III sounded in negligent misrepresentation, alleging that defendants made representations that they knew or should have known were false, and that plaintiff suffered damages from her justifiable reliance on these false representations.

On August 18, 1992, defendants filed a motion to dismiss pursuant to section 2—619(a)(4), which authorizes dismissal of an action that is barred by a prior judgment. According to defendants' motion, the prior judgment barring this action was the circuit court's May 27, 1992, order dismissing with prejudice plaintiff's complaint in *Pelon v. Copley Press.* There, the trial court ruled that plaintiff's four-count complaint against Copley Press, alleging breach of contract, promissory estoppel, fraud, and intentional interference with contract, failed to state a cause of action. (See 735 ILCS 5/2—615 (West 1992).) The factual allegations of the complaint in *Pelon v. Copley Press* are practically identical to those in this case. The complaint in *Pelon v. Copley Press* (a copy of which defendants filed with their motion) also alleges that defendants acted within the scope of their employment with Copley Press when they made the alleged misrepresentations; count II of the complaint, sounding in fraud, stated that "[Copley Press] through its agents Bob Wall and Paul Seveska misrepresented the agreement being offered to Plaintiff while having knowledge that the misrepresentation was false."

At the time defendants filed their motion to dismiss the complaint here, the judgment in *Pelon v. Copley Press* was on appeal to this court. On May 26, 1993, this court issued an order affirming the trial court's dismissal of three of the counts but reversing the dismissal of count I, sounding in breach of contract, and count III, which

alleged promissory estoppel. We reinstated these counts and remanded *Pelon v. Copley Press* for further proceedings in accordance with our decision. (*Pelon v. Copley Press* (2d Dist. 1993), No. 2—92—0629 (unpublished order pursuant to Supreme Court Rule 23).) There is no indication in this record as to the progress of that suit after remand.

On October 20, 1992, defendants moved pursuant to Supreme Court Rule 137 for attorney fees and costs. They alleged that sanctions were warranted because plaintiff and her counsel knew or should have been aware that, because *res judicata* clearly applied to this complaint, the complaint was not based on a belief formed after reasonable inquiry that the action was well grounded in the facts and warranted by existing law. See 134 Ill. 2d R. 137.

The trial court granted defendants' motion and dismissed the complaint. The court agreed with defendants that, under *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, the present suit was barred by the judgment against defendant's employer because the two actions were based on the same operative facts and any liability on the part of Copley News in the first suit derived solely from the wrongful actions, if any, of its agents Wall and Seveska. The trial court ordered defendants to prepare a fee petition.

Plaintiff prepared a response to the Rule 137 motion. She alleged that her decision to file this action was dictated by the belated disclosure of new evidence. Specifically, plaintiff's attorney made the following allegations, which she supported by affidavit. Directly after the May 27, 1992, hearing in the first suit, plaintiff's attorney asked defense counsel for the written employment offer involved in the suit. Defense counsel replied that no such written offer existed. This was the first time plaintiff's attorney had been advised that the defendant denied the existence of a written offer. This new evidence suggested that Wall and Seveska had been acting beyond their authority as agents of Copley Press, in which case Copley Press would have no liability or financial interest in the litigation.

The trial court awarded defendants the attorney fees they requested and, on January 6, 1993, awarded defendants further attorney fees that they incurred after the filing of the original petition. Plaintiff timely appealed.

■ This appeal turns on the application of the doctrine of *res judicata*. This doctrine provides generally that a final judgment on the merits is conclusive as to the rights of the parties and their privies, and, as to them, is an absolute bar to a subsequent action involving the same cause of action. (*Simcox v. Simcox* (1989), 131 Ill. 2d 491, 497; *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251;

*Edwards v. City of Quincy* (1984), 124 Ill. App. 3d 1004, 1008.) Where applicable, *res judicata* applies not only to those issues that were raised in the first proceeding, but also to any issues that might have been raised in that proceeding. (*Housing Authority*, 101 Ill. 2d at 251-52; *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.* (1989), 189 Ill. App. 3d 638, 649-50.) Thus, there are ordinarily three elements that a party invoking *res judicata* must prove: (1) an identity of parties or their privies in the two suits; (2) an identity of causes of action; and (3) a final judgment on the merits in the first suit. (*Ilg*, 189 Ill. App. 3d at 650; *Neuberg v. Michael Reese Hospital & Medical Center* (1983), 118 Ill. App. 3d 93, 98-99.) Courts ought not apply *res judicata* technically so as to create unjust results, but must consider whether the preclusion of a second suit will advance the goals of judicial economy and fairness. *Ilg*, 189 Ill. App. 3d at 650.

Plaintiff argues that the trial court could not properly have invoked *res judicata* to dismiss her complaint in this case, as, at the time of the order of dismissal, there was no final judgment on the merits in *Pelon v. Copley Press*. We agree. For *res judicata* purposes, a judgment is not final until the possibility of appellate review has been exhausted. (*Best Coin-Op, Inc. v. Old Willows Falls Condominium Association* (1987), 158 Ill. App. 3d 492, 496.) Because the judgment in *Pelon v. Copley Press* was on appeal at the time defendants here moved to dismiss pursuant to section 2—619(a)(4), it was not a final judgment, and the trial court erred in granting the motion to dismiss. See *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 113 (trial court properly refused to apply collateral estoppel, which requires a final judgment on the merits, where suit on which moving party relied was appealed and appeal was not concluded until after motion was ruled upon); *In re Application of Cook County Collector for Judgment & Sale Against Lands & Lots Returned Delinquent for Nonpayment of General Taxes for the Year 1985* (1991), 228 Ill. App. 3d 719, 736 (failure to appeal circuit court judgment imparts *res judicata* effect to that judgment); *Kenny v. Interim General Superintendent of Schools* (1983), 112 Ill. App. 3d 342, 348 ("[a] trial court's judgment *not appealed from* becomes final and is *res judicata* to an identical claim."). (Emphasis added.)

■ Following the authority noted above, we conclude that the trial court erred as a matter of law in finding that there had been a final judgment in the prior case to which defendants sought to give preclusive effect. Thus, defendants did not prove all the elements of *res judicata*, and their motion to dismiss should not have been granted. Because we conclude that defendants failed to prove that there was a final judgment, we need not address whether they

satisfied the requirements of identity of cause action and identity of parties or their privies. We reverse the dismissal of the complaint, and we remand the cause for further proceedings consistent with this disposition.

As we have held that defendants were not entitled to invoke *res judicata*, we reverse outright the award of attorney fees pursuant to Supreme Court Rule 137. Both the petition for fees and the award of fees depended on the assumptions that *res judicata* barred this suit and that plaintiff and her counsel should have so realized this at the time they filed the complaint. These assumptions are erroneous, and the fee award that is based upon them may not stand.

The judgment of the circuit court of Lake County is reversed, and the cause is remanded.

Reversed and remanded.

QUETSCH and COLWELL, JJ., concur.